IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Catherine Weinstock, and, | ) |
| | ) |
| Marion Weinstock, | ) |
|     Plaintiffs, | )    4:25-cv-01254 |
| | ) |
| v. | ) |
| | ) |
| | ) |
| Kristine Hubbard, and, | )    Jury Trial Demanded |
| | ) |
| The Hubbard Law Firm, P.C., | ) |
| | ) |
|     Defendants | ) |
| | ) |

## ORIGINAL COMPLAINT

COMES NOW the Plaintiffs, Catherine and Marion Weinstock (collectively, "Plaintiffs"), by and through their undersigned counsel, and asserts the following demands for relief against the Defendants, Kristine Hubbard and The Hubbard Law Firm, P.C. (collectively, "Defendants"), as follows:

## JURISDICTION

1. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, which provides district courts with jurisdiction over civil actions when, as here, the amount in controversy is greater than $75,000 and the dispute is between citizens of different states.

2. Venue is proper pursuant to 28 U.S.C. § 1391(d) because the Defendants possess sufficient and substantial contacts within this district.

Plaintiffs' Original Complaint - Page 1 of 18

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the allegations in this complaint occurred in this district.

## PARTIES

4. Catherine Weinstock (hereafter, "Plaintiff Catherine" or "Catherine") and her mother, Marion Weinstock (hereafter, "Plaintiff Marion" or "Marion"), reside in Brooklyn, New York.

5. Defendant Kristine Hubbard (hereafter, "Defendant Hubbard" or "Ms. Hubbard") is a Texas-licensed attorney (#24110020) and is believed to reside in Harris County, Texas.

6. The Hubbard Law Firm, P.C., is a Texas-based professional corporation, located at 6464 Savoy Drive, Ste. 777, Houston, Texas 77036. As of March 6, 2025, the Texas Comptroller of Public Accounts and Secretary of State list the corporation as "inactive" and reports that the franchise tax was "involuntarily ended."

7. Upon information and belief, Ms. Hubbard is the sole owner and operator of The Hubbard Law Firm, P.C.

## FACTUAL ALLEGATIONS

8. Plaintiffs filed a lawsuit in this Court on December 13, 2021 (4:21-cv-04053) relating to fraudulent investment schemes of which Plaintiffs were victims and asserting breach of contract and fraud damages of more than seven million dollars.

9. Plaintiffs' initial attorney, Mr. Dustin Webber, experienced adverse health issues, closed his private practice, accepted a position working for the Department of the Treasury, and withdrew his representation of Plaintiffs on April 27, 2022.

10. Due to the lapse in legal representation, no discovery was sought or received by Plaintiffs for roughly three months after the withdrawal of Mr. Webber. Neither of Plaintiffs possess any legal training, nor are either aware of the relevant rules and processes that govern discovery requests.

11. On August 4, 2022, the Court issued an Order that the parties (to 4:21-cv-04053) may "serve written discovery" by August 26, 2022. *Ex. 1*.

12. On August 19, 2022, while searching for legal counsel, Plaintiff Catherine discovered Defendant Hubbard online via Upwork.com. Catherine spoke with her on the phone for seventeen minutes that day, starting at 2:05PM. Catherine provided details of the pending litigation, including the case number and court information, and sought engagement. Ms. Hubbard boasted of her toughness in deposition, stating that she "liked to make grown men cry." She also stated that she had a "good friend" who clerked for Judge Hughes, with whom she intended to get together for lunch or coffee. Catherine interpreted this to mean that this relationship might work in their favor. The parties agreed that Catherine would email Ms. Hubbard relevant details and documents. Ms. Hubbard provided her email address near the end of the call - at 2:21PM – via text message. *Ex. 3*, p.1.

13. Catherine expressed Plaintiffs' concerns about the impending written discovery deadline of August 26, 2022, prior to and after the engagement of Ms. Hubbard. Despite this, Ms. Hubbard missed the deadline and did nothing to correct her error.

14. At 5:24 PM on August 22, 2022, Catherine emailed Ms. Hubbard a summary of the lawsuit, including twenty attachments of relevant documents. *Ex. 4*. Catherine included the case number ("SDTX 4:21-cv-04053") and clearly stated, "[w]e have a deadline of 26 August for our Discovery Demands." *Ibid*. At no point prior to or during representation did Ms. Hubbard ask any questions about or make any remarks pertaining to any of the documents she was provided.

15. Less than an hour later, at 6:10PM, Catherine texted Ms. Hubbard "I have to file 2 documents by Friday…into the Court." Ms. Hubbard responded a minute later, "Ok. I am still looking over everything. I will give you a call tomorrow midday and we will figure it out." *Ex. 3*, p.1.

16. Catherine and Ms. Hubbard spoke on the phone just one more time, for a total of eighteen minutes, prior to Ms. Hubbard deciding to represent Plaintiffs. At 4:59PM on August 23, 2022, Ms. Hubbard texted that she would "send [the engagement agreement] over either later this evening or first thing in the am." *Ibid*.

17. Ms. Hubbard provided an engagement letter (*Ex. 2*; hereafter, the "Engagement Letter") dated August 24, 2022 that Plaintiffs executed and returned on August 26, 2022.

18. The Engagement Letter specifies "Effective Date. Our representation shall commence as of August 24, 2022." *Ex. 2*, p.1.

19. The Engagement Letter specified a "blended contingency rate of $3,000 in flat fee and 20% of any sums recovered related to the litigation." *Id.* at p.2. The Engagement Letter required a $500 retainer, which was sent by Catherine via Zelle on August 24, 2022. *Ex. 5*.

20. On August 25, 2022, Ms. Hubbard texted Catherine, "…tomorrow is not a deadline…[t]omorrow is the first day discovery is allowed. We have until November." *Ex. 3,* p.1. Catherine responded, "Really? But don't tell that to William. Did you see the most recent order?" *Ibid*. Ms. Hubbard responded, "I did. Trust me. I do this for a living. (winking face emoji)" *Ibid*. Catherine responded, "Of course I believe you!" Finally, Ms. Hubbard texted, "Haha…It gives me time to read through all the contracts and see if we can file a motion to dismiss their counterclaim and prepare the appropriate discover (sic)…it won't take me more than a week." *Id.* at p.2.

21. At 9:53PM that evening, Catherine texted a copy of the Discovery Order stipulating the requirement that written discovery be served prior to August 26th and stated, "I am understanding 'by August 26' to mean that we have until August 26…" *Ex. 3,* p.2. Ms. Hubbard responded at 11:44AM on August 26, 2022, "Also, I promise we are good on discovery. We do not need to report to the judge about discovery progress until December." *Ibid*. In response to a question from Catherine about amending the complaint, Ms. Hubbard texted, "You need to trust me here. I'm a good lawyer, I promise. (winking face emoji)" *Id.* at p.3.

22. Plaintiffs trusted Ms. Hubbard to their detriment. She missed the discovery deadline and did not respond to another text from Catherine until the evening of September 2, 2022, when she expressed that she planned "on jumping in all the way next week." *Ibid*.

23. However, Ms. Hubbard did not "[jump] all the way in" the next week. In fact, she responded to no emails, sent just one text message (*Ibid.*), and returned just one phone call that week - on Friday, September 9, 2022 at 5:40PM, lasting a total of nine minutes. *Ex. 7.*

24. On September 13, 2022 at 3:21PM, Catherine texted, "Hi Kristi – Haven't heard from you and I am a bit concerned. Is there anything I can do to help?" *Ex. 3*, p.3. In follow-up, Catherine placed two phone calls within a few minutes; Ms. Hubbard returned her phone calls at 3:27PM and they spoke for four minutes. *Ex. 7*. It would be the last time they spoke on the phone.

25. On September 14, 2022, Catherine texted, "Hi Kristi – were you able to file the amended complaint before midnight?" (*Ibid.*), followed several hours later with, "I checked PACER and apparently the filing hasn't been recorded yet." *Id.* at p.4. Ms. Hubbard responded with, "Hi! I filed it last night but never got the confirmation. So, I checked this morning and still nothing. I have been on the phone w the pacer customer service people off and on all dang day…I'm sorry!!! But I am working on it and it will get done today." *Ibid*.

26. On Friday, September 16, 2022 at 7:52AM, Catherine emailed Ms. Hubbard expressing concern over the lack of communication and that nothing had been filed that week. "I am very concerned that there has been a breakdown in communication…I have the necessity of knowing that my matter is on track. I don't need daily phone calls…[t]he last thing I want to become is a nag...[t]o date…it appears that the amended Complaint has not been filed. Nor has the Discovery demand list – hence, my anxiety…" *Ex. 6*, p.1.

27. Ms. Hubbard responded at 3:14PM that afternoon apologizing for her lack of communication, stating that she "got [her] PACER issues resolved," and that she was doing research "to finalize the complaint." *Ibid*.

28. Catherine inquired when the work might be complete, to which Ms. Hubbard responded at 3:52PM that "everything will be out the door by next Friday at the latest. I have a nanny, and a new law clerk to help me with everything, so I am on track." *Id.* at p.2.

29. On September 21, 2022 at 6:14PM, Catherine sent an email to Ms. Hubbard inquiring whether the documents were on track to be filed on Friday, September 23rd, as promised the week prior. *Ex. 15*. Ms. Hubbard never responded to this email.

30. On September 22, 2022 at 6PM, Catherine texted, "Hi Kristi – hope all is well. Are we on track for tomorrow's filing?" *Ex. 3,* p.4.

31. On September 23, 2022 at 8:31AM, Ms. Hubbard responded with, "Yes. On track. I will send it to you later today and then file." *Ibid*. Catherine responded, "Great. Is the Discovery also going to be filed?" *Ibid*. Ms. Hubbard responded with, "Should be!" *Ibid*.

32. At 1:39PM that same day, Catherine texted, "Do you know anything about 'motion for leave'?" *Ibid*. Ms. Hubbard responded, "I do. And that's what we are going to file along with the complaint." *Ibid*. Catherine responded, "Ok – wonderful (smiley face with halo emoji)" *Ibid*. Ms. Hubbard subsequently requested a copy of the original complaint, explaining that she would forward it to her law clerk. *Ibid*. This was something that Ms. Hubbard could have obtained via PACER at any time. Ms. Hubbard subsequently texted, "Thanks! Finishing things up." *Ibid.*

33. At 5:53PM that day, Catherine texted, "Did you receive the files?" *Ibid*. Ms. Hubbard responded, "I did! Sending you the motion and amended complaint shortly." *Ibid*. Catherine sent a few follow-up texts, to which Ms. Hubbard responded at 10:08PM, "Just

sent. Sorry it's late. They are installing ATT fiber in our neighborhood and they cut the lines for Xfinity customers…(hand over face emoji)" *Ibid*.

34. At 10:07PM, Ms. Hubbard emailed the Amended Complaint to Catherine. See, *Ex. 8*. The Amended Complaint was identical to the Initial Complaint filed by Mr. Webber on December 13, 2021, except that it now contained one additional page (out of fifty) containing a RICO cause of action. *Ex. 8,* p.47.

35. At 10:18PM, Catherine texted, "How is the complaint amended?" *Ex. 3,* p.4. Ms. Hubbard responded, "There's a Rico coa that wasn't there before. I spent most of my time on that disaster of a motion without an amended complaint." *Ibid*.

36. The motion that Ms. Hubbard attached to the email was, in substance, 295 words, or about two-thirds the length of one page of text. See, *Ex. 9*.

37. Less than a minute later, Ms. Hubbard followed with, "I am happy to refund your $500 and let you find counsel that will be happy with if that is the case." *Ex. 3,* p.5. Catherine responded, "I'm just trying to understand what is different…[f]rom the original…I see the move to amend. Which states the RICO claim." *Ibid*. Ms. Hubbard responded, "Well, you didn't even have an amended complaint. And you had a motion that literally made no sense." *Ibid*. Catherine responded, "I didn't know that," to which Ms. Hubbard responded, "Then perhaps you should change your tone." *Ibid*.

38. After Catherine inquired where she should direct her focus, Ms. Hubbard responded, "The rico coa…[a]nd the entire motion. And the fact that you didn't even have an amended complaint." *Ibid.* Catherine responded, "I don't have a tone. I'm just skimming through it and trying to understand how it differs from the original – no need to take offense." *Ibid*.

39. A minute later, Ms. Hubbard stated, "I am not currently comfortable filing an appearance on your behalf in my home district." *Ibid*. After Catherine questioned why, Ms. Hubbard continued, "Your lack of respect for professional boundaries and your consistent attempts to practice law and insist you are right when you do not in fact know how to practice law. I very much respect this judge. And you make me nervous with your lack of self reflection." *Ibid*.

40. Catherine responded, "I am just trying to get it done," to which Ms. Hubbard replied, "That's not your job. I always get it done. And I do it well." *Ibid.*

41. A minute later, Catherine responded, "You told me a month ago that you like to be early with everything," to which Ms. Hubbard replied, "I do. And we are early. This is what I mean by you not understanding the practice of law. I have other clients. **We have no hard deadlines.** I have to research your case, the contracts, and the law. That doesn't happen in one day, especially when I have other clients." *Ibid* (emphasis added).

42. Over the next few minutes, the two exchanged texts expressing Catherine's desire for assistance and Ms. Hubbard's desire to assist. At 10:32PM, Catherine stated, "I'm sorry – I am traumatized by Dustin leaving in the middle of the case…Was the original complaint not sufficient?" *Id.* at p.6. Ms. Hubbard responded, "I totally understand. I won't leave you, as long as you will let me do my job." *Ibid*.

43. A few minutes later, while reviewing what she understood to be, as well as what was titled, the Amended Complaint, Catherine asks, "So the complaint has yet to be amended?" *Ibid.* Ms. Hubbard replies, "That's you not listening or reading. It has been amended, but not the way I would like, but you won't leave me alone for more than 36 hours to do my job when

I have other cases." *Ibid.* As of that moment, ten days had passed since their last phone conversation; nine days had passed since their last text conversation, and seven days had passed since Ms. Hubbard had responded to an email – and Ms. Hubbard had produced roughly a page and a half of work.

44. At 10:41PM, Catherine asks, "Did William at least do a good job on Discovery?" *Ibid.* A minute later, Ms. Hubbard responds, "The discovery is slightly better, but I am still working on it. I will file the motion and the amended complaint this weekend as soon as the internet is back up." *Id.* at p.7. Ms. Hubbard did not attempt to reconcile this statement with her statement five minutes prior that the Amended Complaint was not "the way [she] would like…." *Id.* at p.6.

45. Catherine thanked her for her hard work and Ms. Hubbard replied, "Thank you! I appreciate you and want you to get justice. It's just a slower process than you would probably prefer… (slight frowny face emoji)." *Id.* at p.7. This was the last time Ms. Hubbard responded to a text message from Catherine.

46. On October 6, 2022 at 2:36PM, after having no contact for thirteen days, during which Ms. Hubbard failed to respond to two emails, three text messages, and nine phone calls, Ms. Hubbard sent her last email to Catherine, stating, "Attached. I will give you a call tomorrow morning." *Ex. 10,* p.2.

47. What was attached was another purported Amended Complaint. See, *Ex. 11*. In this newest version, the only difference was that Ms. Hubbard had removed her signature from page 49, presumably so that Catherine could file the document pro se - despite Ms. Hubbard having never terminated her representation. *Ex. 11,* p.49. However, Ms. Hubbard failed to

remove her signature from the Certificate of Service on page 50 or correct the footer, which indicated a wrong document title and incorrect total number of pages. *Id.* at 49-50.

48. The phone call Ms. Hubbard promised via email on October 6th never occurred. See, *Ex. 7*. Exasperated, Catherine responded via email on October 8, 2022 at 5:13PM.

> "We are at crunch time and I was hoping to have everything resolved yesterday in a phone call…which did not materialize. You are not communicative or reachable and your voice mailbox continues to be full. This is a source of frustration for me. I feel as though I am in a perpetual state of limbo….While I very much appreciate the work you did on the Amended Complaint and Discovery, there are multiple errors as well as amendments to be made. For example, the Discovery has the incorrect index number on the first page…all of the documents need to be updated to include the additional Defendant with his details….MY deadline for filing is on Monday, October 11 by 4pm EST. **Clearly I would prefer that you file it as the Attorney of Record.** But the continuous failure to meet even your own deadlines is disturbing and has me inclined to file it myself as "pro se"….I am trying in earnest to put this relationship back on track...I need to see the same from your side." *Ex. 10*, p.1

49. Ms. Hubbard never responded to this email or any further phone calls. In total, Catherine attempted to reach Ms. Hubbard by phone fifteen times between September 14th and October 10th. *Ex. 7.* Ms. Hubbard never responded to any of them. *Ibid.*

50. On October 11, 2022, Plaintiffs filed a Motion for Leave to File an Amended Complaint and a Motion for Production of Documents.

51. On November 29, 2022, The Court denied the Motion for Leave to Amend based on the exception to civil RICO actions based upon acts of securities fraud (18 U.S.C. § 1964(c), contained in the Private Securities Litigation Reform Act of 1995) and the fact that Plaintiffs had failed to state an exception to the exception. See, *Ex. 12*.

52. On November 30, 2022, the Motion for Production was denied due to the deadline of August 26, 2022 having passed. *Ex. 13,* p.2. In its Order, the Court noted that Plaintiffs

mentioned "that they 'have documentary proof of having been advised by legal aide that [d]iscovery began as of August 26, 2022.'" *Ibid*. "By the Court's perception, it seems that the plaintiffs have misunderstood the Court's discovery order, which set August 26, 2022 as the deadline to serve written discovery – not as the earliest point that it may begin. A misunderstanding of the Court's instructions, however, is not an acceptable excuse for failing to comply with them." *Ibid*. "Since the deadline for written discovery has passed, the plaintiffs' motion for production is denied." *Ibid*.

53. Roughly half of the Defendants (the "Berry Defendants") subsequently filed a Motion for Summary Judgment on February 10, 2023, that was granted by the Court on March 31, 2024. The remaining Defendants are in default, though no default judgment has been entered. On information and belief, Plaintiffs aver that the remaining Defendants have no assets, rendering a final default judgment moot.

54. Ms. Hubbard's failure to request any discovery, or schedule and take any depositions of Defendants resulted in Plaintiffs being unable to prosecute or prove necessary elements of their case. Plaintiffs would have obtained sufficient evidence of fraud and breach by the Berry Defendants sufficient to overcome their Motion for Summary Judgment but for Ms. Hubbard's failure to timely request discovery and/or take depositions.

55. Likewise, had Ms. Hubbard realized her error regarding written discovery, timely filed entry into the case, and requested a short extension, the Court very likely would have granted it and discovery could have been obtained. The consequences of the error could likely have been avoided. However, Ms. Hubbard did nothing. She simply quit communicating with Plaintiffs.

56. Plaintiffs aver that Ms. Hubbard misrepresented that she filed the amended complaint on September 13, 2022, that she was on the phone with PACER customer service on September 14, 2022, that she intended to file the amended complaint on September 23, 2022 or the weekend after, that her Internet access was interrupted on the evening of September 23, 2022, or that she did any paring down of the original complaint.

57. Upon information and belief, Plaintiffs would have prevailed in their lawsuit but for Ms. Hubbard's failures to obtain discovery, file documents, or provide competent representation.

58. Upon information and belief, Plaintiffs would have been awarded damages in excess of $7 million plus interest and attorney's fees.

59. Upon information and belief, Plaintiffs would have been able to collect those damages from the Berry Defendants.

**FACTS RELATING TO ETHICS COMPLAINT TO STATE BAR OF TEXAS**

60. On or about December 23, 2022, Plaintiffs filed an ethics complaint against Ms. Hubbard with the State Bar of Texas, Office of the Chief Disciplinary Counsel, expressing a number of the concerns outlined in this Initial Complaint.

61. Ms. Hubbard provided a response to the State Bar of Texas on February 23, 2023. In it, Ms. Hubbard stated that "…I terminated our engagement shortly after it began." *Ex. 14,* p.1. As noted, Ms. Hubbard never terminated the engagement, in writing or otherwise.

62. Further, Ms. Hubbard falsely stated that "there was no way for me to serve discovery responses that could be compelled without a continuance, because Ms. Weinstock engaged me on the same day as the discovery cutoff." *Ibid*.

63. As noted supra: Ms. Hubbard was contacted on August 19, 2022 (¶ 12) and provided pertinent details of the pending litigation sufficient to alert her to the need to review the pleadings and deadlines in the case prior to agreeing to provide representation; she was actually informed of the impending deadline via email and text message on August 22, 2022 (¶¶ 14, 15); she agreed to provide representation on August 23, 2022 (¶ 16); she was engaged on August 24, 2022 with an Engagement Letter having an effective date of August 24, 2022 (¶¶ 17, 18); she was paid the initial fee of $500 via Zelle on August 24, 2022 (¶19); she discussed the impending deadline and was provided a copy of the Discovery Order via text on August 25, 2022 (¶¶ 20, 21); and, she reiterated her incorrect interpretation of the Discovery Order on the morning of August 26, 2022 (¶ 21) – with ample time remaining to comply.

64. Ms. Hubbard repeated this false statement in varying ways in her response to the State Bar: "…she did not engage me until the day of the discovery cutoff…" (*Ex. 14*, p.2); and, "Ms. Weinstock retained me on the same day as her deadline…" (*Ibid*.). However, it remains demonstrably false.

65. Ms. Hubbard also falsely stated, "After reading the discovery order, verifying that I interpreted it correctly, I informed Ms. Weinstock several times that we would need a continuance…." *Ex. 14*, p.1. Ms. Hubbard never used the word "continuance" once in any of her communications with Catherine. Further, the statement contradicts Ms. Hubbard's own words of August 25, 2022 that "…tomorrow is not a deadline. Tomorrow is the first

day discovery is allowed. We have until November…. Trust me. I do this for a living….” *Ex. 3*, p.1. Both statements cannot simultaneously be true; indeed, here, both statements are false.

66. It is demonstrably false that Ms. Hubbard "interpreted [the Discovery Order] correctly." This is supported by the Court's Order of November 30, 2022 – "…it seems that the plaintiffs have misunderstood the Court's discovery order, which set August 26, 2022 as the deadline to serve written discovery – not as the earliest point that it may begin." *Ex. 13,* p.2.

67. Regarding the PACER issue, Ms. Hubbard stated, "I did have an issue with PACER, but it allowed me to pause before making an appearance on Ms. Weinstock's behalf…I resolved my PACER issue, but was convinced at this point to terminate the relationship." *Ex. 14*, p.3. As noted above, the PACER issue supposedly occurred on the evening of September 13, 2022. *See*, ¶ 25. Ms. Hubbard continued to claim she was working on an Amended Complaint, a Motion for Leave to Amend, and a discovery request for at least ten additional days. *See*, ¶¶ 31-35, 44. Thirteen days later, or twenty-three days after she was supposedly convinced to "terminate the relationship," she emailed Catherine a copy of the Amended Complaint, the Motion for Leave to Amend, and the Discovery motion, and stated that she would call Catherine the following morning. *Ex. 10,* p.2. Never did Ms. Hubbard terminate the relationship.

68. Regarding the timing of the Discovery Order, Ms. Hubbard stated: "Discovery would have closed before any responses were due…" (*Ex. 14*, p.1); and, "…we would not have been able to compel responses…because you must send out the discovery requests with enough time for the opposing party to respond *before* the discovery period ends…" (*Id*. at p.2).

As previously noted, the Discovery Order proscribed, "1. By August 26, 2022, the parties may serve written discovery." *Ex. 1*. The Order clearly does not set a deadline for responses; the twenty-two day period between the Order date and deadline for service is supportive. *Ibid*. The next line makes it clear that the Court was fully capable of ordering a deadline for completion were that intended – "2. By December 2, 2022, depositions must be completed." *Ibid*. Further, as noted supra, Ms. Hubbard's text message of August 25, 2022 directly contradicts these statements – "…tomorrow is not a deadline. Tomorrow is the first day discovery is allowed. We have until November…. Trust me. I do this for a living…." *Ex. 3,* p.1.

69.   Finally, Ms. Hubbard stated, "…there were no hard deadlines as far as I was concerned because they had already passed by the time she engaged me." *Ex. 14*, p.4. As noted supra, it is clear that Ms. Hubbard was engaged on August 24, 2022 (¶ 17-19), acknowledged the impending deadline on August 25, 2022 (¶ 20), acknowledged it again on August 26, 2022 (¶ 21), and that at least two other "hard" deadlines existed in the case – December 2, 2022, for the completion of depositions and December 16, 2022, for a status report on discovery and next steps in the litigation. *See*, *Ex. 1*.

## CAUSES OF ACTION

### Count 1: Legal Malpractice

70.   Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

71.   Defendants owed a duty to Plaintiffs as that of a licensed attorney, namely, the duties to pursue and protect Plaintiffs' interests, to treat their case with competence and care, to act

|  |  |
|---|---|
|  | with reasonable diligence and promptness, to communicate with them, and to review and understand the filings and deadlines in the case. |
| 72. | Defendants breached that duty by failing to request any discovery within the deadline proscribed by the Court, failing to file an appearance in the case, failing to schedule any depositions, failing to file any documents, and by misrepresenting the nature of the deadlines, stating that there were "no hard deadlines," and misrepresenting the causes of those failures. |
| 73. | Defendants failed to exercise the standard of care that would be exercised by a reasonably prudent attorney in the same position, namely providing competent legal services. |
| 74. | Defendants' actions and inactions caused injury to Plaintiffs, specifically to their ability to effectively prosecute the lawsuit for which Defendants were hired. |
| 75. | Plaintiffs have been damaged by Defendants' conduct. |
| 76. | Plaintiffs are eligible for exemplary damages due to Defendants' actions of fraud, malice and/or gross negligence. |

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A.  Determine the damages sustained by Plaintiffs as a result of Defendants' legal malpractice, and award those damages against Defendants and in favor of Plaintiffs, plus such pre-judgment and post-judgment interest as may be allowed by law;

B.      Award Plaintiffs appropriate exemplary damages in consideration of Defendants' fraudulent, malicious and/or grossly negligent behavior;

C.      And, award Plaintiffs appropriate and lawful attorneys' fees and costs.

## JURY DEMAND

Plaintiffs hereby demand trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: March 17, 2025

                                      Respectfully submitted,

                                      /s/Nicholas H. Parks
                                      Nicholas H. Parks
                                      The Parks Law Firm, P.C.
                                      Attorney for Plaintiffs
                                      Alabama Bar No: 7306M46B
                                      Texas Bar No: 24058032
                                      PO Box 200
                                      Shannon, AL 35142
                                      Phone: 214-991-2642
                                      Fax: 214-441-6425
                                      Email: nhparks@gmail.com